UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

v.                                 Case No. 12-2633-CM

MARIO CARRETTE, et al.

        Defendants.

**ORDER**

"Facebook," for technophobes or anyone else not among its currently reported 1.1 billion users worldwide, is a free Internet-based social networking website that allows registered users to create profiles, upload photographs and videos, send messages, and keep in touch with friends, family, and colleagues. The undersigned U.S. Magistrate Judge, James P. O'Hara, generally favors technological advancements in civil litigation that lower costs and improve efficiency. But, on account of constitutionally imposed considerations of due process, the court respectfully declines the invitation in this copyright infringement case to "like" Facebook as the suggested sole means of substituted service of process under Rule 4 of the Federal Rules of Civil Procedure.

The plaintiff, Joe Hand Promotions, Inc., is a television distributor of pay-per-view and closed circuit special events. Plaintiff claims that the defendants, Mario Carrette and M & B, Inc., both doing business as "EL TAPATIO," unlawfully pirated the broadcast of an Ultimate Fighting Championship ("UFC") match between Georges St-Pierre and Josh Koscheck on December 11, 2011. After several unsuccessful attempts to

serve the complaint and summons upon defendants in person, and after supposedly having exhausted all standard means to serve defendants, plaintiff has filed a motion asking the court to enter an order authorizing substituted service via Facebook **(doc. 12).**

Plaintiff filed its complaint against defendants on September 25, 2012.[1] Plaintiff attempted to serve the complaint and summons on defendant M & B, Inc., but its purported principal place of business was vacant and all attempts to serve it there proved fruitless.[2] Plaintiff also attempted to serve defendant Mario Carrette at his last known residence and place of business, but that too was unsuccessful.[3] Plaintiff did not effectuate service upon defendants before the 120-day deadline provided by Fed. R. Civ. P. 4(m).[4] The court granted plaintiff's motions for extensions through May 6, 2013 to effectuate service.[5] Plaintiff was still unable to do so.[6] However, having recently found a Facebook profile that supposedly belongs to defendant Carrette, and having exhausted all of the standard means to serve defendants, plaintiff now asks the court to authorize service on defendants in the form of a Facebook message.[7]

---

[1] *See* doc. 1.

[2] Doc. 12, ¶5.

[3] *Id.* at ¶7.

[4] *Id.* at ¶10.

[5] Docs. 6, 7, 10, and 11.

[6] Doc. 12 at ¶¶11-12.

[7] *Id.* at ¶15; *See* Doc. 12, Ex. B.

Fed. R. Civ. P. 4(e) and (h) contemplate various methods of service upon individual and corporate defendants. For example, Rule 4(e) allows service on an individual by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." It is clear from plaintiff's motion that plaintiff has exhausted all conventional methods of service for both defendants in this case. It is unclear, however, that allowing an unconventional method of service via Facebook would comport with traditional notions of due process, or would achieve the desired result of effectuating service on defendants.

When it comes to allowing a method of service not specifically listed in Rule 4, due process is the paramount concern. That is, the Supreme Court has made quite clear that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8] And so, along with many other methods of alternative service, service via e-mail has been allowed by some courts.[9] These courts have found

---

[8] *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950) (considering whether or not service by newspaper publication should be allowed under the due process clause).

[9] *See Rio Properties, Inc. v. Rio Int'l. Interlink*, 284 F.2d 1007, 1016 (9th Cir. 2002) (finding that service via e-mail is acceptable when accompanied by a court order); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *2-6 (S.D.N.Y. March 7, 2013) (finding that service via e-mail was likely to reach the defendants); *In re Int'l Telemedia Ass'n, Inc.*, 245 B.R. 713, 719 (Bankr. N.D. Ga. 2000) (finding that e-mail is authorized by Fed. R. Civ. P. 4(f)(3)).

that even though the service may be unorthodox, service via e-mail "comports with due process where a plaintiff demonstrates that the e-mail is likely to reach the defendant."[10]

Allowing service via Facebook message clearly would be unconventional as of today -- plaintiff cites no legal authority for this as the sole means of service of process. Of course, the court readily acknowledges that, assuming for the sake of discussion Facebook does not become obsolete and get replaced by another medium with more bells and whistles in the next few years, service of process via that medium may become as legally acceptable as service via e-mail.

As earlier indicated, it appears no federal court has allowed a Facebook message to be the sole means of service.[11] Some courts have allowed Facebook message as a supplementary mode of service, but even those courts recognized that doing so creates potential due process issues.[12] In order to satisfy due process, the court must be sure that the method of service is likely to reach the defendant, so that the defendant may have an opportunity to present his case.[13] This is a legitimate concern when serving a defendant via Facebook message, as the court can rarely be certain that the information has actually reached the intended recipient. It would be unfair to allow service through this

---

[10] *See F.T.C.*, 2013 WL 841037, at *2-6.

[11] *See Id.*; *see also Fortunato v. Chase Bank USA,* No. 11 Civ. 6608 (JFK), 2012 WL 2086950, at *2-3 (S.D.N.Y. June 7, 2012).

[12] *See F.T.C.*, 2013 WL 841037, at *2-6.

[13] *Id.*

alternative means unless the court could be reasonably sure that this service would reach the defendant.

Anyone with an e-mail address can access Facebook and create a profile "using real, fake or incomplete information."[14] As a practical matter, the court cannot verify that the Facebook profile supposedly belonging to a defendant is real unless the movant presents the court with adequate evidence proving its authenticity.[15] For example, in *Fortunado v. Chase Bank USA*, the court found that Facebook was an inadequate means of service because the movant presented no facts as to the Facebook profile's authenticity.[16]

In *F.T.C. v. PCCARE247, Inc.*, the plaintiffs asked to serve the defendants through e-mail as well as Facebook, and were allowed to do so.[17] The court recognized that "if the FTC were proposing to serve the defendants *only* by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise as to whether that service comports with due process."[18] The defendants were online businessmen who regularly communicated with customers through e-mail.[19] One of the

---

[14] *Fortunato,* 2012 WL 2086950, at *2-3.

[15] *Id.* at 2.

[16] *Id.*

[17] *Id.* at 4.

[18] *F.T.C.*, 2013 WL 841037, at *2-6.

[19] *Id.* at 4.

defendants had even used his e-mail address to e-mail the court directly.[20] Because the court was also able to determine that the e-mail addresses used to maintain their business were the e-mail addresses used to register their personal Facebook pages, the court was satisfied that the Facebook profiles belonged to the defendants to be served.[21]

Unlike *F.T.C.*, there are very few, if any, factual assurances in the case at bar. The only evidence to show the Facebook profile's authenticity is the presence of links to "El-Tapatio, Spring Hill" and "El Tapatio Mexican Restaurant and Cantina," which are supposed to prove the page's authenticity.[22] There is no e-mail address listed on the profile and no other indication of the profile's authenticity.[23]

Given the present state of the record, the court cannot conclude that the subject Facebook profile is current, active, or authentic. Therefore, plaintiff's motion for order of substituted service via Facebook **(doc. 12)** is denied. By **July 22, 2013**, assuming that it really makes sense economically to pursue any further, plaintiff shall show cause to the presiding U.S. District Judge, Carlos Murguia, why this case should not be dismissed without prejudice for lack of service under Fed. R. Civ. P. 4(m)

IT IS SO ORDERED.

Dated July 9, 2013, at Kansas City, Kansas.

---

[20] *Id.* at 5.

[21] *Id.*

[22] Doc. 12, ¶ 16.

[23] Doc. 12, Ex. B.

                                                  <u>s/ James P. O'Hara</u>
                                                  James P. O'Hara
                                                  U.S. Magistrate Judge